Now they won't have. Thank you. Miss, you can tell us. Good morning, your honors morning. Counsel, may it please the court. My name is April Contala. I represent defendant appellant, Christopher Garcia on behalf of the office of the state appellate defender. The single issue presented in this case is whether the trial court abused its discretion when it barred nearly all of the evidence that defense counsel sought to introduce at trial and thereby denied Mr. Garcia, his right to present a defense, the trial courts, evidentiary rulings barred and back up. What about the offer of proof? Yes, your honor. Um, part of the trial court's ruling was that defense counsel was not permitted to make an offer of proof. So my question is, how do we know what the evidence is or would have been? Your honor, some of the information was given by defense counsel during the conversation that occurred in chambers about whether this evidence would be admissible on some of it was also included in defense counsel's motion for a new trial, but the bottom line is we, we don't entirely know exactly what the evidence would have been because counsel was not allowed to make an offer of proof. And that is part of the error that the court made in this case. Didn't counsel have the opportunity to make a complete offer of proof in the post-trial motion? No, your honor. Um, the, the proper procedure for the offer of proof in this case, particularly with regard to the proposed expert testimony, uh, would have been to bring the doctor, Dr. Mark Crescenzo into chambers and allow counsel to attempt to lay an adequate foundation to qualify him as an expert. Um, she represented that he was there available to testify that afternoon. So, um,  I mean, the counsel can relate to the court, what he or she believes the testimony would be, that would be an adequate offer of proof. Wouldn't that? Yes, you're on that. That is adequate. However, um, in people versus Pettit, where the proposed witness is actually available to testify, the preferred procedure for preserving your record is to allow that witness to actually give the substance of what their testimony would be. Was there a post-trial motion? Yes, your honor. Did the post-trial motion include error relating to, uh, the court's denial, uh, relative to the presentation of proof? Yes, your honor. There was some episode of that hearing and within any pleading that was filed by the defense counsel, was there anything conveyed or placed on the record that would cause? There was to some degree, your honor, there was some detailed information included in the post-trial motion, as well as some information given verbally during this discussion. You say some, which implies that there, it's less than all. Yes. Is there some place in the record where the all is? How do you, how is it that you know that this is less than all? Well, put another way. How do you know that there, that the offer of proof didn't, uh, didn't contain all the information or testimony that would have been presented had the court allowed it? That goes primarily to the proposed expert testimony. Um, missing from the record is any detail with regard to Dr. which is diagnosed Mr. Garcia with bipolar disorder. Um, and his basis for that diagnosis that presumably would have been available had Dr. Crescenzo been allowed to convey to the court the substance of his proposed testimony, including his qualifications through an offer of proof. Um, however, he did not have the opportunity to do that and defense counsel didn't otherwise present it in a post-trial motion. You're not raising an effective assistance to counsel for failing to include that in a post-trial motion, correct? No, your Honor. Also missing from the record is any evidence tying bipolar disorder to what was witnessed by the witnesses, correct? Your client, uh, the actions six to eight hours after the fact, after the arrest. Your Honor, um, in the opening brief, there are citations to the American which is great, but the problem is I'm talking about the offer of proof, you know, the, the, an offer of proof is to educate the trial court and here clearly, I mean, you're, you're, you're noted in the brief that the trial court was somewhat confused about what bipolar disorder was and how it manifested itself, correct? Yes, your Honor. So if the trial judge is confused about that and says, basically, this isn't bipolar disorder. Isn't it incumbent upon defense counsel to, in an offer of proof to educate the trial court? Yes. And it was at that point, your Honor, that defense counsel said, it's my understanding based on your ruling that I'm not going to be allowed to call any of my witnesses, including Dr. Crescenzo. And I would ask the court at this time to make a detailed offer of proof with regard to each of those witnesses. And the trial court responded, I don't need an offer of proof to make this ruling. If you wanted more time to present all this stuff, you needed to make it more clear before we started the trial. So defense counsel didn't make an attempt. And it's important, I think, to look at how this conversation started. Initially, what happened was defense counsel attempted to call Officer Sheldon to the stand and the state objected to the relevance of Officer Sheldon's testimony. It was through the conversation about whether Officer Sheldon would be allowed to testify that we got into the larger issue that Mr. Garcia had been diagnosed with bipolar disorder as a result of his behavior in the hours following his arrest. He was taken to the emergency room at Mercy Center specifically for a psychological evaluation to be conducted. That Dr. Crescenzo then did conduct such an evaluation and went through the procedure of diagnosing Mr. Garcia. So that came up in the context of discussing the admissibility of Officer Sheldon's testimony. And sort of, you know, through that discussion, the court made clear that nothing about Mr. Garcia's bipolar disorder diagnosis or any of his behavior that led to him being taken to the emergency room that day was going to be admitted. And it was at that point defense counsel said, okay, I would like to make this offer of proof then with regard to all of my other witnesses. And the court declined to hear that offer. Well, let's assume that that's error, not allowing that offer of proof. And at that point in time, but counsel did take it upon a man or a woman himself or herself to, to make an offer of proof in the post-trial motion, you know, as to what each of these witnesses summary as to what they were going to say, correct? Yes. She did include some information in the post-trial motion. But again, some information, is it incumbent upon counsel at that point in time to tell the trial court and give the trial court the opportunity to correct its error and lay out here is what Dr. Crescenzo would testify to here, here are his qualifications for making a bipolar disorder diagnosis. And here is exactly as in the DSM-5, this is how it manifests itself, which is exactly what my client was doing. I mean, because I'm looking at the offer of proof, I mean, it's maybe 10 lines and it doesn't say anything about any of that. Your honor, respectfully, defense counsel may not have been able to anticipate exactly everything that Dr. Crescenzo was going to say, which is why she would have gone through the process of questioning him as to all of his qualifications. And the court could have then made a determination at that point, either this person is qualified or not qualified to make these determinations and offer any testimony about what the nature of this mental illness is. She also may not have personally known why exactly Dr. Crescenzo made his diagnosis, what he observed or what led him to this conclusion because she's not a doctor. So she needed to question the doctor in order to get that information in front of the trial court. What she could have done in the interim between the trial and the filing of the post-trial motion. If defense counsel could have presumably done more research on her own, however, the proper source of that information was the expert. So the expert was the one who needed to present it to the court. I'm not talking about the lawyer presenting her opinion to the court. I'm talking about the lawyer talking to the doctor and saying, what would you have testified to? And then writing that in the post-trial motion saying, here, judge, this is what you excluded. This, this relevant evidence is what you excluded. And I just, I mean, again, I don't see an outline, even a rough outline in this post-trial motion as to what that evidence was. It's not included in the post-trial motion. Defense counsel represented generally that she expected the doctor to testify as to the diagnosis that he made and the attendant symptoms that he observed in making that diagnosis. How was the diagnosis supposed to prove or disprove either that it was a voluntary act of driving or that it was under the influence of some sort of drug or alcohol? Your Honor, what the diagnosis and the symptoms of that diagnosis was intended to prove was causation. What caused Mr. Garcia to be incapable of thinking and acting with ordinary care and rendered him incapable of driving safely at the time of his arrest. So it goes to the causation. Was it alcohol? Was it a mental illness? Was it something else entirely? A combination of the two? That was a question of fact for the jury to decide, and they needed to hear both sides of the case in order to make that determination. By analogy, it's similar to cases in which defense counsel presents expert testimony regarding a diabetic condition that a defendant might have. If that person is suffering from hypoglycemia or hypoglycemic shock at the time that they're driving, a lot of the symptoms that they might exhibit at the time that they're pulled over on suspicion of DUI are interpreted by the police as indicia of intoxication, but the expert testimony of a doctor can explain that those same symptoms can be indicia of hypoglycemia in a diabetic defendant. Well, my point is, is that if you were contesting that it was a voluntary act, his mental problems could have precluded his knowledge that he was in fact driving a vehicle. Your Honor, I don't interpret this as contesting whether or not he was voluntarily driving a car. It's contesting whether the reason he was impaired while he was driving was alcohol or something else. There was an alternative explanation for why he was driving erratically, behaving erratically, and so on. He never made a defense of automatism, though. I'm sorry? He never raised the defense of automatism. No, Your Honor. There was, this was definitely not an affirmative defense situation. I think there was some confusion about that in the trial court. What made you think that automatism is an affirmative defense? Well, regarding the voluntariness, if he was alleging that his actions were involuntary or that he was somehow not culpable for driving in an impaired state, that that was not what he was alleging. So the proposed testimony would not have necessarily disproved that Mr. Garcia was rendered incapable of driving safely due to alcohol consumption or relieved him of criminal liability if he was in fact driving under the influence of alcohol. It just would have provided the jury with a reasonable alternative explanation as to the cause of his impaired driving, namely that he was impaired by his mental illness rather than by alcohol consumption. And I also think it's important to note that this is not a reasonable doubt sufficiency of the evidence argument. After hearing all of the testimony of the defense witnesses, the jury would have been free to conclude that Mr. Garcia was impaired by only his mental illness, by a combination of his mental illness and alcohol consumption, or only by alcohol consumption. The point is that they did not get to hear both sides. They didn't get to hear the evidence that there may have been another explanation for why he was impaired and driving in that state. So... When the expert witness examined your client, were there any tests given him in the sense of blood tests, pulse rate, electroencephalogram, anything? All we know, Your Honor, about what took place when Mr. Garcia was at the emergency room with regard to testing was that the police did not ask the doctor to do a blood draw, take his urine or anything like that. That's made clear in the record. But as to exactly what the doctor did in determining his heart rate or the process he went through to complete the diagnosis, the details of all of that are not entirely clear. Presumably he would have been able to offer that testimony. All we know is that whatever he did wasn't based upon a request for the state. What? Yes, Your Honor. He did not draw blood or do any testing at the request of the officers. The officers brought Mr. Garcia there for a psychological evaluation. As the video footage depicted and as the police personnel that observed Mr. Garcia in the hours following his arrest could have attested to, his erratic, bizarre behavior continued for several hours after he was brought to the lockup at the Aurora police station. It culminated in him running headlong into a concrete wall repeatedly, which is why he was ultimately taken to the emergency room. So they didn't check him for a concussion, they checked to see if he was actually sane while hitting his head against the wall, and if he was sane, they take him back and let him do it again? Your Honor, I can't speak to that. They, they may have checked him for a concussion. Again, the doctor who treated him did not testify, nor did any of the other medical personnel involved in his treatment. So if I may briefly conclude. You may. Your Honors, Mr. Garcia was denied the right to present evidence crucial to explaining his actions in this case. And he was thus denied his right to present defense. We ask that you remain in this trial. This is for a new trial. Thank you. You'll have an opportunity to make rebuttal. Thank you, Your Honor. Mr. Bernhardt, or is it Bernhardt? Good morning. Good morning, Your Honor. I guess it's still Happy New Year, too. Excuse me, a little bit under the weather. I don't think this bipolar condition was an alternate condition. And if it was, certainly defense counsel did not offer enough proof, enough evidence, anything to the trial court that would change his mind. Now I, I think that's important, but what I think is more important is the- There was no opportunity to do that in the trial court because the trial court did not allow an offer of proof at that point in time, during the trial. Well, I think he did allow some offers of proof. It's just like Officer Sheldon, and they talked about the doctor. He did not offer, or he wouldn't allow offer of proof on the hospital and the police personnel that observed the defendant between, well, most of them was like eight, 10, 13 hours later. I think the closest one was maybe five hours. And in that case, the issue here was whether he was driving intoxicated. By that time, most of the alcohol would have been metabolized. Could he suffer from a mental illness? Yes. But the issue here, what was relevant is the fact that he was drinking. They found him with an open bottle in his car with the cap off. You would agree that all the officers who rendered an opinion that he was intoxicated relied on very erratic behavior in part, correct? Well, in part, and again, they've had the experience. And one officer, I think DeSantis said, you know, I have seen hundreds of people drunk, and this guy was very intoxicated. How many bipolar people has he seen? Or bipolar people that have had some amount of alcohol? Well, the question wasn't asked, but certainly it goes, the question of intoxication certainly goes to what this issue is and why he was driving so erratically. There is absolutely nothing in the record that defense counsel presented. And frankly, in common experience, that bipolar disorder causes this kind of reaction, unless you're taking alcohol. I think your Honor should probably know some people that have bipolar disorder. But you say that the trial court should have relied on its own independent knowledge of bipolar? Well, I think he did a little bit, but he didn't really know the full extent of what it could be. But he pretty much said, I don't need any expert evidence or offer proof in order to make my ruling. Well, that was, but you have, his ruling was because of the remoteness of the evidence. Isn't that the whole point of the evidence? That the behavior was observed at the time of the stop and that behavior continued for 12, 13, 14 hours later, as you indicated, well beyond the time where the alcohol would have been dissipated from the system. Yes, Your Honor, but still, I guess I would say it is beside the point. The point is, despite this person's condition, he was drinking, had a strong odor of alcohol from his breath. His eyes were glassy, red, bloodshot. He, when they took him out of the car, he refused to get out of the car. When they picked him up and stood him up, he went limp. I don't know of any, in the DSM that says you go limp when you have bipolar disorder. But certainly when you have drank too much, that does happen. And there was many other, I mean, the way he drove, he was driving twice the speed limit. He went through two stop signs. After he started slowing down, he put both of his hands outside the window. Clearly, he may have had a mental illness, but he was also clearly intoxicated. And the evidence in this remoteness, and that was what the judge was relying on us. This evidence is way too remote to be proud of his intoxication. And that was the issue. Wait a second. I could follow your argument somewhat until what you just said, which is that it's too remote. How is it that it's too remote? Because the evidence of his intoxication is no longer intoxicated after five, ten hours. That's a non sequitur. It has nothing to do with how remote the analysis is after the fact. That's like saying that in a homicide, it's too remote to determine whether or not the victim was intoxicated or was under the influence of drugs. So what? I mean, no, it isn't. The issue is that when you're intoxicated, if you don't take a blood test, you don't have a breathalyzer. The only way you can find out if the way you're acting is the fact that you have to notice, excuse me, you know, the issues of intoxication or, you know, the factors of intoxication. Did the expert claim to have ever opined that this defendant did not consume alcohol? I have no. Because if he didn't, then it doesn't make any difference because his testimony would have related to how long, if ever, this aberrant behavior was. And so when you talk about remoteness is, it would be remote if the doctor said, I don't think this aberrant behavior began until 15 minutes ago when he started running his head into the wall. Then your argument would make sense. But if the doctor says, I've diagnosed this guy, he's been bipolar and he's been bipolar based upon some of the things that I've heard about what he did six months ago, he's been bipolar for six months. Now, it's not a question of remoteness. It's a question of whether or not there's evidence to indicate that at the time of the arrest, he was bipolar and or intoxicated. You are conflating the two defenses or the two arguments by talking about it's too remote for purposes of proving intoxication. And it seems like you're therefore saying, ergo, the expert testimony about aberrant behavior can't be used or can't be presented. I'm saying that even if it wasn't presented, it wouldn't have mattered because because it wasn't presented, because there is such strong evidence of his intoxication. The strong evidence is really just the officer's opinion that was based significantly on the unusual behavior. Well, that was based on that, too, but certainly intoxicated people act in strange ways. That was for the jury to decide. Plus, shouldn't they have all the evidence when they make that factual determination? And I think this was a bench trial. No, I think it was a jury trial. You could be correct. It was a jury trial. Give me a second. I think they found the defendant not guilty of consuming the brandy. Am I correct? Well, not consuming the brandy, just transporting open liquor. Oh, okay. And that could be a case of lenity, jury lenity, too. The fact is, is there was so much evidence intoxication. We have three different officers who have had the experience of seeing intoxicated people say, yes, he was very intoxicated. But what was their opinion based on? It was based on behavior, correct? Well, that and the strong breath of alcohol, him going limp, his red bloodshot eyes, that they all, every police officer uses to determine whether they've been drinking or not. And certainly behavior like yelling and screaming, we've all done DUI cases where the defendant has acted that way to the officers because they have no self-control, because of being intoxicated. Do we know whether or not he took a bottle of brandy and sprinkled it all over him, as opposed to consuming it? Well, it was on his breath. They didn't say it was on his clothes. They said it was on his breath. You've got to open the bottle of liquor that was partially drank with the cap off in the car. I think that's pretty strong evidence of intoxication combined with the red eyes, glassy eyes, bloodshot eyes, the alcohol, the smell of alcohol, the fact that he went limp. As soon as they pulled him out, he was so drunk he couldn't even stand. So you don't believe in the Almond Joy defense, then? I'm not familiar with the Almond Joy defense. Sometimes I feel like it, sometimes I don't. I don't believe in that, not in this case. Is there any other questions, Charlie? Justice Burke said the offer of proof would have helped the trial court. Do you think it might have helped us? It would have certainly helped us, yes. It would have given us the opportunity to determine whether or not there was a reasonable defense that the defendant could raise and submit to the trier effect? I think it would, but I think sometimes, you know, strategy, you try to bring this up. But maybe you don't have the case you really have. You know, maybe this expert witness wasn't, you know, it's up to defense counsel to bring this expert witness in and qualify. They didn't have to do it. I mentioned my brief, there was no CB or anything. You know, they have to bring these people forward. The state had the opportunity to get the CB and never brought it back up again. In one of the earlier post-trial motions, the state objected and the trial court said, talk to the doctor, he's on your witness list, state. See if you can get what you can get. If you can't get something, let me know. And then the state never came back and said we didn't get the CB, so we want it from the defense. Again, trial strategy. Well, you can't come back now and argue in front of us. But trial strategy by who? By the state by not asking for it, then you can argue it? Well, they're going to wait until the defense counsel brings it up or not. They don't know what the defense counsel is going to do. I mean, they objected to his testimony for good reasons, but and the judge bought those reasons. Without allowing the defendant to make an offer of proof, without having that doctor. That's not true. I think the distinction here in the record, as I remember it, is that there was much talk about the expert witness, and that she did testify that the witness was going to say that this guy had bipolar disorder. But then he, they did not let them have an offer of proof for those hospital personnel and the doctors or the police personnel that observed the defendant later on, that, you know, eight to 13 hours later and observed that video. I think there was some, and I'm pretty sure in the record, but, you know, I'm not going to say 100%, but there was a discussion about the offer of proof and what this expert would say. The judge said no because of the remoteness of it and that it had nothing to do with his actual intoxication. And I think it's pretty clear, you know, abusive discretion means it's got to be clearly against logic. And I don't think the trial court's rulings were against logic when you do consider remoteness of the testimony. And certainly it was harmless when you consider the strong testimony of the police officers and what this defendant did, you know, exhibiting alcohol intoxication. I'm not clear as to whether or not it's your position that no error was committed or that any error that was committed was harmless. It's both, Your Honor. I think if you decide that there was some error here, I think it was harmless because of that strong evidence. The concept of a jury trial suggests that the jury, as prior effect, is supposed to make the determination as to whether or not the state has proved its case and or the defendant has proved the defense that would in some way subvert or preclude judgment being entered against him or her. And so if the error that was committed was, in fact, error, how could it be harmless if, in fact, what it does is it precludes the prior effect from considering relevant and material evidence? Well, again, I'm not saying this was relevant and material evidence, but I'm also saying, and we do this all the time at the appellate level, that there is harmless error when there's so much evidence that proves intoxication. That's all we needed to prove in the fact that he was driving while he was intoxicated. Okay. Did the bell go off? Okay, well, thank you, Your Honor. You have 30 seconds. And you can close as well. I made my closing. Okay. Try a tea tank. That's hot tea. Thank you, Your Honor. Okay. Ms. Quintella. Your Honors, I first want to address the fact that Officer Pacente testified that he smelled alcohol emanating from Mr. Garcia and saw what he apparently believed to be an open bottle of alcohol in the car. This circumstantial evidence does not necessarily lead to the conclusion that Mr. Garcia was intoxicated. A person can drink alcohol and have alcohol in his presence without being intoxicated. The circumstantial evidence of alcohol consumption presented by the State's witnesses gave no indication of how much alcohol Mr. Garcia had consumed, if any, or when it was consumed, unless you look at those behavioral symptoms. It all has to go together in order to lead to the conclusion that Mr. Garcia was, in fact, intoxicated. So the bloodshot eyes, slurred and confused speech, poor driving, psychomotor control issues, all of that could be logically linked to symptoms of bipolar disorder as well. And that's the real issue here, that there was no evidence presented to counter the State's theory that that was all indicia of intoxication as opposed to something else. In addition, the Court's decision not to hear an offer of proof with regard to Dr. Cresenzo's testimony was largely informed by its determination that Dr. Cresenzo was presumptively unqualified to offer expert testimony on the issue of bipolar disorder because he was a medical doctor, not a psychiatrist or clinical psychologist. Can you comment on counsel's argument, or statement, I believe, that Dr. Cresenzo, I'm sorry, that counsel was given the opportunity to put forth what Dr. Cresenzo's testimony would have been in the trial court? Your Honor, I think that she did put forth some information. The doctor made the diagnosis, and it was based on the fact that he had been taken there, Mr. Garcia had been taken to the ER for a psychological evaluation because of all of these behaviors. She also gave more detail about exactly how Mr. Garcia was behaving at the time that he was at the emergency room in the post-trial motion when she talked about all of the other medical personnel that were involved in his treatment and what they would have testified to. So there was some detail given about that, but again, much of this conversation centered around whether Dr. Cresenzo, as an emergency room physician, was going to be qualified to give his opinion. So at the point that the court made the determination that he was presumptively unqualified because he was an emergency room doctor, it kind of derailed any further conversation about what the substance of his testimony would have been as to why he diagnosed Mr. Garcia with bipolar disorder. So the court was kind of fixated on his credentials and his medical specialty as part of the reasoning why it did not want to hear an offer of proof and did not want to allow him to testify as an expert on a mental illness issue. Did you hear the argument that was made relative to the fact that this was a remotion? Yes, Your Honor, I did. And what's your comment on that? With regard to that, first of all, timing has no impact on the relevance or admissibility of expert testimony. Well, even if it did, wouldn't it be something that would have to be presented in order for the trial court to determine whether or not this should go in? And if the trial court doesn't allow an offer of proof to establish whether or not it is or isn't remote, then the defendant is put between a rock and a hard place? Yes, Your Honor. And the trial court actually mentioned in ruling on the post-trial motion that the only expert testimony it seemed open to hearing on the issue of Mr. Garcia's mental illness was something from a person from the Kane County Diagnostic Center who at some unspecified point previously had conducted a fitness evaluation on Mr. Garcia pursuant to an unrelated case. So if the time that elapsed between Mr. Garcia's arrest and the formation of the expert opinion with regard to his bipolar disorder diagnosis and whether those symptoms were present, if that was in fact relevant, then the testimony that the trial court said it wanted to hear was even less relevant than the testimony Dr. Cresenzo could have provided because the observations of that person had not been within hours of the arrest. It had been some months, weeks, years prior. So the expert testimony is relevant regardless of the timing because an expert opinion can be formed at any time and still be relevant, provided that the basis for the opinion is sound. With regard to all of the other evidence, if I may briefly finish. Any other questions? You may close. Thank you. We respectfully ask that Your Honor's remand this is caused for a new trial because Mr. Garcia was denied his right to present a defense. Thank you. Thank you. Thank you. A short recess. There are other cases on the panel.